Brian E. Holthus, Esq.
Nevada Bar No. 2720
JOLLEY URGA WIRTH
WOODBURY & STANDISH
3800 Howard Hughes Parkway, 16th Floor
Las Vegas, Nevada 89169
Telephone:  (702) 699-7500
Facsimile:  (702) 699-7555
Email:  beh@juww.com

Lewis K. Loss (*pro hac vice*)
Matthew J. Dendinger (*pro hac vice*)
LOSS, JUDGE & WARD, LLP
Two Lafayette Centre
1133 21st Street, NW, Suite 450
Washington, DC 20036
Telephone:  (202) 778-4060
Facsimile:  (202) 778-4099
Email:  lloss@ljwllp.com
         mdendinger@ljwllp.com

Attorneys for Progressive Casualty
Insurance Company

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| PROGRESSIVE CASUALTY INSURANCE COMPANY<br><br>Plaintiff,<br><br>v.<br><br>FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER OF SILVER STATE BANK; COREY L. JOHNSON; DOUGLAS E. FRENCH; GARY A. GARDNER; and TIMOTHY S. KIRBY<br><br>Defendants. | Case No. 2: 12-cv-00665-KJD-PAL |

**PLAINTIFF PROGRESSIVE CASUALTY INSURANCE COMPANY'S SUPPLEMENTAL BRIEF CONCERNING UNRESOLVED ISSUES ADDRESSED IN ITS MOTION FOR A PROTECTIVE ORDER AND DEFENDANT FEDERAL DEPOSIT INSURANCE CORPORATION, AS <u>RECEIVER OF SILVER STATE BANK'S, MOTION TO COMPEL</u>**

- 1 -

Pursuant to the Court's September 24, 2013 Order [DE 105], Plaintiff Progressive Casualty Insurance Company ("Progressive"), by and through its undersigned counsel, respectfully submits this Supplemental Brief Concerning Unresolved Issues Addressed in its Motion for a Protective Order [DE 79] and Defendant Federal Deposit Insurance Corporation, as Receiver of Silver State Bank's ("FDIC-R"), Motion to Compel [DE 86] (collectively the "Discovery Motions").

I. **Background**

As the Court is aware, this is a contract action addressing the operation of a D&O liability insurance policy issued by Progressive to Silver State Bank to a claim asserted by the FDIC-R against former directors and officers of the bank. Although actions such as this frequently are resolved based on the application of the contract language to the facts of the claim—as Progressive believes this action ultimately will be—the FDIC-R here insisted that discovery is necessary, and the Court has allowed discovery to proceed.

On June 11, 2013, the Court held a hearing on the Discovery Motions filed by Progressive and the FDIC-R. During that hearing, the Court ordered the parties to further meet and confer in an effort to resolve the issues addressed in the Discovery Motions. The parties have spent substantial time since then attempting to resolve as many of the issues addressed in the Discovery Motions as possible, and they believed they had reached an agreement in principle as to all but one of those issues as of the last hearing on this matter on September 24, 2013. However, it has become apparent as the parties have attempted to document their agreement that the significant burden Progressive has expressed a willingness to bear in order to resolve these issues—which Progressive does not believe it should be required to bear—is not enough to satisfy the FDIC-R. Therefore, although the parties have

been able to resolve certain issues, it appears that it is necessary for the Court to resolve others.[1]

The FDIC-R's approach to the discovery issues in this matter is consistent with the FDIC's approach to discovery generally in the seven similar declaratory judgment ("DJ") actions in which Progressive and the FDIC are involved. It has become apparent recently that the FDIC is intent on a scorched-earth approach to discovery in the DJ actions. The FDIC has issued largely duplicative discovery to Progressive in each of the actions seeking many of the same documents and information and, so far, has issued more than thirty third-party subpoenas.[2] The FDIC's counsel in this and one other matter involving similar issues have provided ESI search terms to Progressive that have retrieved a total of 480,000 individual documents, each of which must be reviewed for relevance, privilege, and/or confidentiality. Progressive's counsel has a team of eight attorneys working full time on this review. Recently, the FDIC's counsel in two other pending actions provided separate lists of search terms, many of which are designed to retrieve the same documents as search terms already provided by the FDIC in this matter.

## II.   FDIC-R Is Not Entitled to Irrelevant and Privileged Reinsurance Material

The one issue with respect to which Progressive and the FDIC-R were unable to reach even an agreement in principle concerns the FDIC-R's request for reinsurance information and communications. Therefore, pursuant to the Court's September 24, 2013 order [DE 105], Progressive provides the following summary of its position concerning this issue.[3]

---

[1] Progressive has advised the FDIC-R of its willingness to continue trying to reach agreement on the remaining issues prior to the October 29, 2013 hearing on this matter. Although the FDIC-R's counsel has also expressed such willingness in theory, he has also expressed skepticism that further agreement is possible.

[2] Four of the FDIC's recent subpoenas are directed to Progressive's reinsurers. These subpoenas were issued in New York on October 1, 2013 in the declaratory judgment action pertaining to Omni National Bank. *Progressive v. FDIC, as Receiver of Omni National Bank, et al.*, No. 1:12-cv-01103-RLV (N.D. Ga.). Progressive and the reinsurers either have provided or shortly will provide the FDIC's counsel in the Omni matter with their objections to these subpoenas.

[3] Progressive provides this summary for the Court's convenience. It is not intended to supersede or replace Progressive's earlier briefing concerning the Discovery Motions [DE 79, 91].

As a threshold matter, although the FDIC-R is not entitled to discovery of much of the reinsurance material it seeks, Progressive has produced, and will continue to produce, non-privileged communications with reinsurers concerning the Progressive D&O policy generally, the drafting history of the policy form and pertinent provisions, including a 2004/2005 revision to the policy, and the meaning, interpretation, application, and use of the policy provisions at issue in this matter. Progressive is in the process of reviewing the 480,000+ ESI documents retrieved by search terms provided by the FDIC-R in order to identify any such communications.

It Item 10 in the FDIC-R's 30(b)(6) deposition notice to Progressive, the FDIC-R requests testimony concerning "any communications with any reinsurer about" all claims "for Policy Nos. 007849-03 and 007849-04." The FDIC-R's requests for production contain similar requests. Request No. 17 seeks "[a]ll documents relating to the purchase, placement or ceding or any reinsurance by you that relate to the Policy, including all status reports provided by you to such reinsurance companies and memoranda relating to meetings with reinsurers." Request No. 37 seeks "[a]ll documents relating to any communications with any reinsurer about the Claims." As discussed in Progressive's Motion for a Protective Order [DE 79, § V.A] and its Consolidated Reply in Support of Motion for a Protective Order and Response to FDIC-R's Motion to Compel [DE 91, § II.E.1], FDIC-R is not entitled to discovery of the claim-specific reinsurance material it seeks.

### A. Reinsurance Material is Not Relevant

The reinsurance material the FDIC-R seeks is not relevant to any party's claim or defense or to the subject matter involved in this action. As a threshold matter, in addition to its file related to the FDIC-R's claim against the Ds & Os, Progressive opened a total of six claim files with respect to the policies referenced by the FDIC-R. Those are completely separate claims that have nothing to do with the FDIC-R's claim. As such, any reinsurance material pertaining to those separate claims has absolutely no bearing on the question of

whether the Progressive Policy at issue in this matter provides coverage for the FDIC-R's claim against the Ds & Os.

As for the FDIC-R's claim against the Ds & Os that underlies this matter, as numerous courts have held, reinsurance material regarding this claim also is irrelevant to the resolution of the sole question presented. For example, in a similar coverage action involving another failed bank in the U.S. District Court for the Northern District of Georgia, the FDIC sought to compel similar discovery of reinsurance material from the failed bank's D&O insurer. *Federal Deposit Ins. Corp. as Receiver of Silverton Bank, N.A. v. Bryan*, No. 1:11-cv-02790-JEC-GGB, slip op. at 26–27 (N.D. Ga. filed Nov. 28, 2012) ("*Silverton*"). The court denied the FDIC's motion to compel, holding that "any reinsurance agreements or reinsurance-related communications are not relevant to the interpretation of the [D&O policy at issue]." *Id.; see also, e.g., Am. Med. Sys., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Inc.*, No. CIV. A. 98-1788, 1999 WL 781495, at *1–2 (E.D. La. Sept. 29, 1999) (holding that reinsurance information was not relevant to a coverage dispute); *Flintkote Co. v. Gen. Acc. Assur. Co. of Can.*, No. C 07-1827, 2009 WL 1457974, at *5–6 (N.D. Cal. May 26, 2009) ("Generally, courts have chosen to deny discovery of reinsurance because it was irrelevant and based solely on business considerations . . . ."); *Great Lakes Dredge & Dock Co. v. Commercial Union Assur. Co.*, 159 F.R.D. 502, 503–04 (N.D. Ill. 1995) (holding that "the relevance of 'all documents' relating to reinsurance is too attenuated to be discoverable under the relevant evidence standard of Rule 26"); *Potomac Elec. Power Co. v. Cal. Union Ins. Co.*, 136 F.R.D. 1, 2 (D.D.C. 1990) (holding that mere speculation that correspondence with a reinsurer could contain admissions of coverage did not make communications with a reinsurer relevant); *Leksi, Inc. v. Federal Ins. Co.*, 129 F.R.D. 99, 106, 115 (D.N.J. 1989) (holding that the relevance of reinsurance information was "very tenuous" and denying discovery of such information); *Indep. Petrochem. Corp. v. Aetna Cas. & Sur. Co.*, 117 F.R.D. 283, 288 (D.D.C. 1986) (denying discovery of reinsurance information on the basis of "very tenuous" relevance to the issue of policy coverage); *Karta Indus., Inc. v. Ins. Co. of the*

*State of Pa.*, 685 N.Y.S.2d 685, 685 (N.Y. App. Div. 1999) (affirming trial court's ruling that reinsurance materials were not relevant).

Unlike *Olin Corp. v. Continental Casualty Co.*, No. 2:10-cv-00623-GMN-RJJ, 2011 WL 3847140 (D. Nev. Aug. 30, 2011) ("*Olin*"), on which the FDIC-R relies and which we discuss below, the circumstances of *Silverton* are substantially similar to the circumstances of this matter, and the court there denied the FDIC's motion to compel production of such documents, and Progressive respectfully submits that this Court should do the same.

The FDIC-R relies heavily on *Olin*. However, *Olin* is distinguishable from this matter and does not support the FDIC-R's position. A central issue in *Olin* was whether the insured had provided the insurer with sufficient information in its proof of loss for the insurer to make a coverage determination. 2011 WL 3847140 at *1, 3–5. Thus, the court concluded that reserve and reinsurance information was relevant "because it could show evidence of [the insurer's] initial evaluation of the sufficiency of [the insured's] proof of loss" and the insured's "satisfaction of contractual prerequisites, which [were] affirmative defenses raised by [the insurer]." *Id.* at *4–5. No similar issues are presented in this matter, and *Olin* is therefore inapposite.

The FDIC-R has asserted that "as in *Olin*" "Progressive has alleged a failure to fulfill a contractual prerequisite by claiming that three of the defendants' claims were untimely." (FDIC-R Brief at 21). However, this simply is wrong. Progressive does not assert the breach of a contractual prerequisite by any of the Ds & Os. Rather, as reflected in Count III of Progressive's Complaint [DE 1], Progressive asserts that two of the four defendants in the FDIC-R's underlying lawsuit are not entitled to coverage under the Progressive Policy because no claim was first made against them during the Policy's policy period or discovery period. Thus, the issue is not whether these two Ds & Os provided timely notice to Progressive of the FDIC-R's claim, *i.e.*, satisfied this "contractual prerequisite" to coverage. The issue simply is whether the FDIC-R's claim against the Ds & Os was first made at a time

that it potentially would come within the Policy's insuring agreement. This is a legal issue, not a factual dispute about what information was provided to Progressive.

### B. Reinsurance Material is Proprietary and Highly Confidential, and Disclosing It Would Reveal Information Protected by the Attorney-Client Privilege and/or Work-Product Doctrine

In addition to the lack of relevance, requiring Progressive to provide the reinsurance material the FDIC-R seeks would invade the attorney-client privilege and the work-product doctrine. Although there may be circumstances in which communications between an insurer and reinsurer regarding a claim would not be privileged, that is not the case here. Progressive retained counsel to assist it with matters involving Silver State in or about June 2008, prior to the bank's failure on September 5, 2008. As such, from the first moment Progressive was advised of the possibility of a claim by the FDIC-R against certain of the Bank's former directors and officers in late 2008, Progressive's counsel has been providing legal advice and analysis concerning the FDIC-R's potential claim, as well as the claim the FDIC-R eventually brought. As such, to the extent that Progressive may have shared with its reinsurers any analysis of the Ds' & Os' potential liability to the FDIC-R and/or the coverage issues addressed in this action, such analysis would necessarily include or reflect legal advice and analysis provided to Progressive by its counsel. Thus, the FDIC-R should not be allowed to inquire into any communications between Progressive and its reinsurers regarding the FDIC-R's claims on this additional basis.[4] *See, e.g., Lipton v. Superior Court*, 56 Cal. Rptr. 2d 341, 352 (Cal. Ct. App. 1996) ("[W]here reinsurance documents include attorney-client or protected work product communications they would be entitled to the same privilege protection as would similar communications between the ceding insurer and its attorneys handling the insured's claim. . . . Similarly, where the requested documents contain confidential commercial information a qualified privilege would be available to protect the documents unless the party requesting discovery can demonstrate a basis for overcoming

---

[4] Again, the same is true with respect to any communications Progressive may have had with its reinsurers regarding other claims made under the referenced policies.

such privilege."). Further, to the extent the courts in the cases cited by the FDIC-R concluded that reinsurance information was not privileged under the particular circumstances of those cases, that does not lead to the conclusion that the FDIC-R should be allowed to delve into privileged matters here. It should not.

### III.   Other Issues

As noted above, although Progressive believed that the parties had reached an agreement concerning the other issues addressed in the Discovery Motions, as the parties advised the court during the September 24, 2013 hearing, the parties have been unable to finalize a written agreement with respect to the majority of those other issues. Progressive therefore provides the following summary of its position with respect to each of these issues, as well as what Progressive advised the FDIC-R it is prepared to do with respect to them as part of an overall agreement.[5] Notwithstanding the substantial compromises Progressive has offered in an attempt to resolve these issues, as set forth in Progressive's original briefs [DE 79, 91], it remains Progressive's position as a threshold matter that the FDIC-R is not entitled to any of the discovery it seeks and that the Court should grant Progressive's motion for a protective order and deny the FDIC-R's motion to compel in their entirety.

### A.   Other Claims[6]

The FDIC-R seeks discovery concerning claims opened since January 1, 2004 under any Progressive D&O policy issued to a financial institution that resulted in payment by Progressive for defense or indemnification and that involved issues similar to those involved in this matter. Although Progressive has been able to identify 526 claims that resulted in such a payment, it remains Progressive's position that the FDIC-R is not entitled to this discovery for the reasons set forth in its earlier briefing (DE 79, § II; DE 91; § II.B). The burden associated with retrieving and reviewing the files associated with these 526 claims

---

[5] Again, the following summary is not intended to supersede or replace Progressive's earlier briefing concerning the Discovery Motions (DE 79, 91).

[6] Sections III.A to III.H address the FDIC-R's requests for production and related motion to compel. Progressive's motion for a protective order is addressed in Section III.I below.

K:\BEH\Progressive 10972\FDIC 12002\PLD\Drafts\13-10-15 Supplemental Discovery Brief.docx

outweighs any potential relevance and any possible benefit the FDIC-R may derive from this discovery. Nonetheless, Progressive has advised the FDIC-R that it would be amenable to the process set forth in Section I of Exhibit 1 hereto.

### B. Other Lawsuits

The FDIC-R also seeks discovery concerning claims in which lawsuits were filed by or against Progressive since January 1, 2004 concerning a Progressive D&O policy issued to a financial institution that involved issues similar to those involved in this matter. It remains Progressive's position that the FDIC-R is not entitled to this discovery for the reasons set forth in its earlier briefing (DE 79, § I; DE 91; § II.A). Nonetheless, Progressive has advised the FDIC-R that it would be amenable to the process set forth in Section II of Exhibit 1.

### C. Claims Manuals and Policies and Procedures Regarding the Investigation, Defense, Resolution, and Settlement of Insurance Claims

It remains Progressive's position that the FDIC-R is not entitled to discovery of these materials for the reasons set forth in its original briefs on the Discovery Motions. (DE 79, §§ III, V.B; DE 91, §§ II.C, II.E.2). However, the FDIC-R and Progressive have reached an agreement with respect to the FDIC-R's request for these materials.

### D. Progressive's Document Retention Policy

It remains Progressive's position that the FDIC-R is not entitled to discovery of these materials for the reasons set forth in its original briefs on the Discovery Motions. (DE 79, § IV; DE 91, § II.D). However, it appears that the FDIC-R and Progressive have reached an agreement with respect to the FDIC-R's request for these materials. Progressive has not yet received written confirmation of this from the FDIC-R, though, and therefore reserves the right to address this further during the October 29, 2013 hearing should the need arise.

### E. Reserve Information

The FDIC-R seeks information concerning Progressive's reserves. As set forth in Progressive's original briefs, the FDIC-R is not entitled to this information. (DE 79, § V.A; DE 91, § II.E.1). During the June 11, 2013 hearing on the Discovery Motions, the Court

advised the parties that the Court is not inclined to order Progressive to produce the information concerning its reserves the FDIC-R seeks. Progressive respectfully requests that the Court formalize its statement to the parties and enter an order barring the FDIC-R from seeking discovery of reserve information. Further, the FDIC-R should not be permitted to withdraw its request for reserve information or its related motion to compel in order to avoid an adverse ruling on this issue.

### F.   Communications Regarding Progressive's Other Insureds

For the reasons set forth in Progressive's original briefs on the Discovery Motions, it remains Progressive's position that the FDIC-R is not entitled to discovery concerning communications regarding Progressive insureds other the entities and individuals insured under the policy at issue in this matter. (DE 79, § VI; DE 91, § II.F). Nonetheless, Progressive has advised the FDIC-R that it would be amenable to the compromise set forth in Section III of Exhibit 1 hereto.

### G.   Regulatory Filings

The FDIC-R seeks discovery of Progressive's regulatory filings and related communications in all 50 states and the District of Columbia. Progressive has agreed to produce its Nevada regulatory filings and related communications. As set forth in Progressive's original briefs, the FDIC-R is not entitled to discovery of Progressive's regulatory filings and related communications in other states. During the June 11, 2013 hearing, the Court advised the parties that the Court is not inclined to order Progressive to produce non-Nevada regulatory filings and related communications. Progressive respectfully requests that the Court formalize its statement to the parties and enter an order barring the FDIC-R from seeking discovery of non-Nevada regulatory filings and related communications. Further, the FDIC-R should not be permitted to withdraw its request for reserve information or its related motion to compel in order to avoid an adverse ruling on this issue.

## H. Relevance

Pursuant to Rule 26(b)(1), the FDIC-R

> may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter.

Fed. R. Civ. Pro. 26(b)(1). Further, "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." *Id.* Progressive has advised the FDIC-R that the things Progressive has expressed a willingness to do in an effort to resolve the issues raised in the Discovery Motions are subject to the caveat that Progressive is not required to produce any documents or information that are not within the scope of permissible discovery as set forth in Rule 26(b).

## I. Progressive's Motion for a Protective Order

It is Progressive's understanding that the FDIC-R is willing to withdraw its deposition notice to Progressive that is the subject of Progressive's Motion for a Protective Order, subject to a reservation of its right to issue a new notice at some point in the future. Except as it pertains to the FDIC-R's requests for testimony concerning reserve and reinsurance information, discussed in Sections II and III.E above, which Progressive requests the Court address at this time, Progressive is amenable to this as set forth in Section IV of Exhibit 1 hereto.

## III. Conclusion

For all the reasons set forth in Progressive's earlier briefing and summarized above, Progressive respectfully renews its request that the Court enter an order granting Progressive's Motion for a Protective Order and denying the FDIC-R's Motion to Compel. In the alternative, Progressive respectfully requests that the Court order the Parties to proceed with discovery as set forth above and in Exhibit 1 hereto.

Respectfully submitted this 15th day of October, 2013,

_____
Brian E. Holthus
Nevada Bar No. 2720
JOLLEY URGA WIRTH WOODBURY
& STANDISH
3800 Howard Hughes Parkway, 16th Floor
Las Vegas, Nevada 89169
(p) 702-699-7500
(f) 702-699-7555
beh@juww.com

Lewis K. Loss (*pro hac vice*)
Matthew J. Dendinger (*pro hac vice*)
LOSS, JUDGE & WARD, LLP
Two Lafayette Centre
1133 21st Street, NW, Suite 450
Washington, DC 20036
(p) 202-778-4060
(f) 202-778-4099
lloss@ljwllp.com
mdendinger@ljwllp.com

*Counsel for Progressive Casualty Insurance Company*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on this 15th day of October, 2013, I caused a copy of the foregoing **Plaintiff Progressive Casualty Insurance Company's Supplemental Brief Concerning Unresolved Issues Addressed In Its Motion For A Protective Order And Defendant Federal Deposit Insurance Corporation, As Receiver Of Silver State Bank's, Motion To Compel** to be electronically served upon all attorneys of record in this action.

_____
An Employee of Jolley Urga Wirth Woodbury
& Standish

- 12 -

# EXHIBIT "1"

## Progressive's Supplemental Brief – Exhibit 1

### I. Other Claims

As noted in Section II.A of Progressive's supplemental brief, Progressive has advised the FDIC-R that it would be amenable to the following with respect to the FDIC-R's requests for discovery concerning claims opened since January 1, 2004 under any Progressive D&O policy issued to a financial institution that resulted in payment by Progressive for defense or indemnification and that involved issues similar to those involved in this matter:

> FDIC-R seeks discovery concerning claims opened since January 1, 2004 under any Progressive D&O policy issued to a financial institution that resulted in payment by Progressive for defense or indemnification and that involved any of the following "Claim Issues":
>
> 1. the claim involved alleged damages that could be construed as "any unpaid, unrecoverable or outstanding loan, lease or extension of credit to any customer or any forgiveness of debt;"
>
> 2. the person or entity asserting the claim was not an **Insured, Insured Person,** or **Company,** as those terms are defined in the Progressive policy form, and the claim involved an assertion by Progressive that it was barred or could be barred by the insured versus insured exclusion; or
>
> 3. the claim was brought by a regulatory body, such as the Federal Deposit Insurance Corporation or a state regulatory agency, in its capacity as conservator or receiver of a bank or by a trustee.

Progressive has identified 526 claim files involving a D&O policy opened since January 1, 2004 that resulted in payment by Progressive (the "Payment Claims").

With respect to each of the Payment Claims, Progressive will review the following documents, to the extent they exist for the respective Payment Claims and to the extent they are available in the Progress system for the respective Payment Claims: (1) Notice of Potential Claim Form or Initial Memo to File; (2) New Claim Form; (3) Complex/Highly Complex Claims Summary or Report; (4) Potential Serious Loss Memo; (5) Claim Closing Memos; and (6) memos summarizing visits to insureds (the "Progress Documents"). Progressive will provide to FDIC-R a list of all Progress Documents reviewed with respect to each of the Payment Claims.

If, based on this review of the Progress Documents, Progressive determines that one or more of the Payment Claims appears to have involved any of the Claim Issues set forth above, Progressive will review the entire paper and electronic claim

file for such claim(s). If Progressive is unable to determine from the Progress Documents whether a claim involved any of the Claims Issues, Progressive will notify FDIC-R of the number of claims in which it was unable to make such determination and the parties will confer regarding what additional steps, if any, will be taken with respect to those Payment Claims.

Progressive will also undertake the following in order to identify Payment Claims that may have involved any of the Claim Issues set forth above. Progressive and/or ABA Insurance Services Inc. ("ABAIS"), its managing general agent, will send an email to: (1) senior management at ABAIS; (2) personnel in the claims department at ABAIS; (3) personnel in the underwriting department at ABAIS; and (4) Progressive personnel involved in the handling of claims pertaining to its financial institutions D&O business asking them to identify any claims involving the Claim Issues of which they are aware. This email can be sent in conjunction with the email sent in relation to Section II below. Progressive will ensure that a response is received from each person to whom the email is sent confirming or denying any knowledge relating to the existence of such claims. Progressive will advise FDIC-R when all such persons have responded. However, Progressive will not produce any such responses to FDIC-R. With respect to any claim(s) identified through this process, Progressive will review the entire paper and electronic claim file for such claim(s).

If, based on further review of the paper and electronic claim files, Progressive determines that one or more of the Payment Claims did, in fact, involve any of the Claim Issues Progressive will produce non-privileged portions of the claim file for such claim(s) to FDIC-R and will provide a log identifying any documents withheld or redacted from such file(s) on the basis of privilege. Progressive may redact from all documents produced identifying information pertaining to Progressive's Other Insureds. If Progressive does so, though, Progressive will identify the documents in such a way as to allow FDIC-R to determine which documents pertain to a particular claim.

Should FDIC-R obtain additional information identifying claims that involve the Claim Issues, FDIC-R reserves the right to request the production of documents relating to those claims. Progressive reserves the right to object to any such requests.

II.     **Other Lawsuits**

As noted in Section II.B of Progressive's supplemental brief, Progressive has advised the FDIC-R that it would be amenable to the following with respect to the FDIC-R's requests for discovery concerning claims in which lawsuits were filed by or against Progressive since January 1, 2004 concerning a Progressive D&O policy issued to a financial institution that involved issues similar to those involved in this matter:

FDIC-R seeks discovery concerning claims in which lawsuits were filed by or against Progressive since January 1, 2004 concerning a Progressive D&O policy issued to a financial institution that involved one or more of the following "Litigation Issues":

1. the claim involved alleged damages that could be construed as "any unpaid, unrecoverable or outstanding loan, lease or extension of credit to any customer or any forgiveness of debt, and Progressive denied coverage or issued a reservation of rights addressing this;"

2. the person or entity asserting the claim was not an **Insured, Insured Person**, or **Company**, as those terms are defined in the Progressive policy form, and Progressive denied coverage or issued a reservation of rights based on the Insured vs. Insured exclusion; or

3. the claim was brought by a regulatory body, such as the Federal Deposit Insurance Corporation or a state regulatory agency, in its capacity as conservator or receiver of a bank or by a trustee, and Progressive denied coverage or issued a reservation of rights with respect to the claim.

Progressive will undertake the following in order to identify such "Litigation Claims." Progressive and/or ABA Insurance Services Inc. ("ABAIS"), its managing general agent, will send an email to: (1) senior management at ABAIS; (2) personnel in the claims department at ABAIS; (3) personnel in the underwriting department at ABAIS; and (4) Progressive personnel involved in the handling of claims pertaining to its financial institutions D&O business asking them to identify any Litigation Claims of which they are aware. This email can be sent in conjunction with the email sent in relation to Section I above. Progressive will ensure that a response is received from each person to whom the email is sent confirming or denying any knowledge relating to the existence of such Litigation Claims. Progressive will advise FDIC-R when all such persons have responded. However, Progressive will not produce any such responses to FDIC-R. Progressive and/or ABAIS also will review summary information available electronically with respect to lawsuits filed by or against Progressive since January 1, 2004 in order to identify any that may involve one or more of the Litigation Issues.

With respect to each of the Litigation Claims identified through the foregoing procedure, or that otherwise come to the attention of Progressive, whether through its privilege review or otherwise, Progressive will review the Progress Documents, to the extent they exist for the respective Litigation Claims and to the extent they are available in the Progress system for the respective Litigation Claims.

If, based on this review of the Progress Documents, Progressive determines that one or more of the Litigation Claims appears to have involved one or more of the Litigation Issues set forth above, Progressive will review the entire paper and electronic files for such claims(s). Progressive will provide to FDIC-R a list of all Progress Documents reviewed with respect to each of the Litigation Claims. If

Progressive is unable to determine from the Progress Documents whether a Litigation Claim involved any of the Litigation Issues or if Progress does not contain information for a Litigation Claim, Progressive will notify FDIC-R of the number of Litigation Claims in which it was unable to make such determination and the parties will confer regarding what additional steps, if any, will be taken with respect to those individual Litigation Claims.

If, based on further review of the paper and electronic files, Progressive determines that one or more of the Litigation Claims did, in fact, involve one or more of the Litigation Issues, with the exception of any discovery produced by Progressive, Progressive will produce non-privileged portions of the file(s) related to such Litigation Claims to FDIC-R and will provide a log identifying any documents withheld or redacted on the basis of privilege. If Progressive produced discovery in connection with any such Litigation Claim(s), Progressive and FDIC-R will meet and confer in good faith to address whether Progressive will produce such discovery and, if so, the circumstances of that production. Progressive may redact from all documents produced identifying information pertaining to Progressive's Other Insureds. If Progressive does so, though, Progressive will identify the documents in such a way as to allow FDIC-R to determine which documents pertain to a particular Litigation Claim.

Should FDIC-R obtain additional information identifying Litigation Claims that involve the Litigation Issues, FDIC-R reserves the right to request the production of documents relating to those claims. Progressive reserves the right to object to any such requests.

### III. Communications Regarding Progressive's Other Insureds

As noted in Section II.F of Progressive's supplemental brief, Progressive has advised the FDIC-R that it would be amenable to the following with respect to the FDIC-R's requests for discovery of communications regarding Progressive insureds other than the entities and individuals insured under the policies at issue in this matter:

Progressive will not withhold from production documents that are otherwise responsive to FDIC-R's requests for production and non-privileged solely on the basis that they pertain to or reference Progressive's Other Insureds. Progressive may redact identifying information from any such documents produced pertaining to such Other Insureds but, if it does so, will identify the documents in such a way as to allow FDIC-R to determine which documents pertain to a particular insured.

With respect to Progressive's communications with Cragin & Pike, Progressive will produce non-privileged ESI identified through search terms pursuant to the ESI protocol in the DJ Action reflecting such communications that is responsive to FDIC-R's requests for production, regardless of whether they refer to Silver State Bank or Progressive's Other Insureds. However, Progressive will not

perform an independent review of its hard-copy files or Progress entries other than those pertaining to Silver State Bank or Western Alliance Bancorporation in order to locate additional documents, if any, reflecting such communications. Progressive will, however, produce any non-privileged documents that come to its attention that are responsive to FDIC-R's requests for production and enter any such documents withheld on the basis of privilege on its privilege log. Again, Progressive may redact identifying information from any such documents produced pertaining to such Other Insureds but, if it does so, will identify the documents in such a way as to allow FDIC-R to determine which documents pertain to a particular insured.

Should FDIC-R obtain additional information regarding Progressive's Other Insureds, FDIC-R reserves the right to request additional documents, including hard copy files, relating to those Other Insureds. Progressive reserves the right to object to any such requests.

### IV.    Progressive's Motion for a Protective Order

As discussed in Section II.I of Progressive's supplemental brief, except as it pertains to the FDIC-R's requests for discovery of reserve and reinsurance information, Progressive is amenable to the following with respect to its Motion for a Protective Order:

Progressive will withdraw its Motion for a Protective Order with respect to the issues addressed therein. Progressive does so without prejudice to its right to file a new or renewed motion for a protective order if FDIC-R serves Progressive with a new deposition notice pursuant to Fed. R. Civ. Pro. 30(b)(6). Except as set forth immediately below, if Progressive files a new or renewed motion for a protective order in response to a new deposition notice served by FDIC-R on Progressive, absent agreement between Progressive and FDIC-R, no deposition of Progressive will take place before any such motion is resolved by the parties or the Court. If, however, any such motion remains unresolved 45 days prior to the close of discovery in this matter, Progressive and FDIC-R will cooperate in good faith to schedule such deposition to occur prior to the expiration of the discovery period. In that event, Progressive would retain the right to object to particular questions on any bases it deems appropriate, including those that are the subject of the protective order. Nothing herein shall be construed as agreement on the part of FDIC-R that any such objections would be proper.