1
2
3
4 **UNITED STATES DISTRICT COURT**
5 **DISTRICT OF NEVADA**
6

7 PROGRESSIVE CASUALTY INSURANCE )
COMPANY, )
8 )
Plaintiff, )          Case No. 2:12-cv-00665-KJD-PAL
9 )
vs. )          **ORDER**
10 )
FEDERAL DEPOSIT INSURANCE )          (Mot. Prot Ord. - Dkt. #79)
11 CORPORATION, et al., )          (Mot Compel - Dkt. #86)
)
12 Defendants. )
_____ )
13

14        Before the court is Plaintiff Progressive Casualty Insurance Company's Motion for Protective

15 Order (Dkt. #79) and Federal Deposit Insurance Corporation as Receiver for Silver State Bank's

16 Motion to Compel Progressive to Respond Fully to Discovery Requests and Opposition to Progressive

17 Casualty Insurance Company's Motion for Protective Order (Dkt. #86).  The court has considered the

18 moving and responsive papers (Dkt. ##91, 94), Supplemental Briefs (Dkt. ##107, 108) filed after a

19 series of meet and confer efforts to resolve these disputes, as well as the arguments of counsel at several

20 hearings conducted, the last of which was conducted on October 29, 2013.

21                                              **BACKGROUND**

22 **I.      The Nature of the Action and Procedural History.**

23        The Complaint (Dkt. #1) in this matter was filed April 20, 2012.  The FDIC-R filed an Answer

24 (Dkt. #28) and Counterclaim (Dkt. #33) June 19, 2012.  Individual Defendants Corey Johnson, Douglas

25 French and Timothy Kirby filed Answers (Dkt. ##35, 36, 37) July 13, 2012.  This is a declaratory

26 judgment action filed by Progressive Casualty Insurance Company ("Progressive") against the Federal

27 Deposit Insurance Corporation as Receiver for Silver State Bank ("FDIC-R").  Progressive seeks a

28 judicial declaration that a Directors & Officers Company Liability Insurance Policy for Financial

1    Institutions No. 0007849-04 (D&O policy") issued to Silver State Bank ("Silver State") and other

2    Named Insureds does not provide coverage for a lawsuit the FDIC-R has brought against four former

3    directors, officers and/or employees of Silver State.

4        Silver State failed in 2008, and was taken over by the FDIC as receiver.  Before it failed, Silver

5    State sent a notice of potential claim to Progressive on August 19, 2008, informing Progressive that

6    representatives of the FDIC-R had advised Silver State on August 5, 2008, that the conduct of Silver

7    State's directors and officers in managing and operating the bank may make them civilly liable for,

8    among other things, breach of their fiduciary duties.  This declaratory judgment action was filed

9    following nearly four years of communications and demands exchanged between the FDIC-R and

10   Progressive to settle claims against the officers, directors and other employees of Silver State.  Before

11   this declaratory judgment action was filed, the FDIC-R filed an action in this court, Case No. 2:12-cv-

12   0209-KJD-PAL ("Receiver's Action"), to recover in excess of $86 million dollars in damages for losses

13   Silver State incurred in connection with loan transactions that were allegedly caused by the gross

14   negligence and breaches of fiduciary duties of Silver State's officers, directors and employees.  In this

15   declaratory judgment action Progressive seeks a judicial declaration that the D&O policy issued to

16   Silver State's officers, directors and employees does not cover losses in the Receiver's Action because

17   of exclusionary provisions.  Specifically, Progressive claims there is no coverage under the policy

18   because of: (1) an "insured verses insured exclusion," and (2) an unpaid loan carveout involving the

19   definition of "loss" under the policy.  Additionally, Progressive claims it received untimely notice from

20   two of the individuals.

21       Progressive filed a Motion for Summary Judgment (Dkt. #41) on July 16, 2012, arguing these

22   exclusionary provisions barred coverage.  The FDIC-R opposed the motion on the merits and on Fed.

23   R. Civ. P. 56(d) grounds arguing summary judgment was premature.  The FDIC-R claimed discovery

24   would develop evidence the insureds reasonably expected coverage for management activities of

25   officers, directors and employees because Progressive advertised and represented that its D&O policy

26   would cover actions brought by the FDIC-R, and that Progressive intended to provide this coverage.

27   The FDIC-R also argued it needed discovery to prove its estoppel and waiver affirmative defenses.  The

28   district judge followed the same approach taken by two other district courts, one in this district, and one

1  in the Eastern District of Michigan[1], and found that the issues could not be fairly determined without

2  discovery.  The district judge therefore denied Progressive's motion for summary judgment without

3  prejudice in an Order (Dkt. #73) entered November 2, 2012, "so that the parties can proceed with

4  discovery in this case."  *Id.*  The district judge's order did not specify or suggest the discovery needed to

5  decide the case on the merits.

6          While the motion for summary judgment was pending, on August 15, 2012, the parties

7  submitted their competing positions in a proposed Discovery Plan and Scheduling Order (Dkt. #52)

8  which requested special scheduling review.  Progressive took the position that no discovery was

9  necessary for the district judge to decide the pending motion for summary judgment, and that the court

10 should defer any discovery to save the parties from incurring unnecessary costs and attorney's fees.

11 Progressive also argued that deferring discovery until after decision of the summary judgment motion

12 would eliminate the need to spend judicial resources on possible discovery disputes that would be moot

13 if the district judge granted the motion for summary judgment.  The FDIC-R and individual Defendants

14 pointed out that they had opposed the motion for summary judgment as premature and had requested

15 discovery under Rule 56(d).  The Defendants submitted they were in a "catch-22 situation" because

16 Progressive had indicated it would object to any discovery before a ruling on the motion for summary

17 judgment.  The FDIC-R therefore suggested that this court should establish a schedule for briefing the

18 Rule 56(d) issue.

19         Both sides requested a scheduling conference to address the parties' competing proposals, and

20 the court set the matter for hearing on August 28, 2012.  After hearing the parties' competing positions,

21 the court denied Progressive's request to stay discovery pending a decision on the motion for summary

22 judgment.  The court also denied the Defendants' request for a briefing schedule on a Rule 56(d)

23 motion.  The court required the parties to meet and confer to either submit a joint proposed discovery

24 plan and scheduling order if they were able to agree on a common plan, or if they could not agree, their

25 competing proposals by August 31, 2012.  The parties filed their separate proposals (Dkt. ##65, 66),

26 _____

27         [1]*See* Progressive Insurance Casualty Co. v. Federal Deposit Insurance Corp., 11-cv-14816
   (Eastern District of Michigan), and Progressive Casualty Insurance Co. v. Delaney, 2:11-cv-0687-LRH-
28 PAL (District of Nevada).

1   and the court entered a Scheduling Order (Dkt. #71) which initially established a February 25, 2013,

2   discovery cutoff and related deadlines consistent with LR 26-1(e).  Thereafter, the parties requested,

3   and received, an extension of the discovery plan and scheduling order deadlines.  *See* Stipulation (Dkt.

4   #74) and Order (Dkt. #75).  The parties also a second Stipulation (Dkt. #103) which proposes to extend

5   the discovery cutoff until June 2, 2014.

6   **II.    The Parties' Discovery Disputes.**

7          These two pending discovery motions were initially set for hearing on June 11, 2013.  The court

8   was not satisfied that counsel had engaged in the required attempts to meet and confer to resolve these

9   disputes without court intervention and directed that the parties conduct meet and confer sessions to

10  narrow their disputes.  The initial motions involved much broader disputes including ESI key word

11  searches pursuant to the parties' stipulated ESI Protocol (Dkt. #84).  The court required the parties to

12  submit a joint status report concerning the results of their meet and confer sessions and continued the

13  hearing until June 25, 2013.  The parties' Joint Status Report (Dkt. #96) reported that they had made

14  progress and requested that the hearing be vacated and reset until July 23, 2013.  A second Status

15  Report (Dkt. #98) was filed July 17, 2013, requesting that the court again reset the hearing until August

16  22, 2013.  The second status report again represented that the parties were making significant progress

17  towards resolving their disputes.  The parties submitted additional Status Reports (Dkt. ##100, 101) on

18  August 2, 2013, and August 16, 2013, indicating further progress had been made and requesting that the

19  hearing be continued until September 24, 2013.  The court granted these requests.

20         At the September 24, 2013, status and dispute resolution conference, the parties represented they

21  had resolved all but one issue concerning reinsurance.  The court directed that the parties reduce their

22  agreements to writing within fourteen days and file supplemental briefing on any unresolved issue

23  within twenty-one days of the hearing.  The status and dispute resolution conference was continued

24  until October 29, 2013.

25         The parties supplemental briefs indicate that, despite months of meet-and-confer sessions and

26  representations to the court that they had resolved all but one dispute, numerous discovery disputes

27  remain which require the court's intervention.

28  / / /

4

**DISCUSSION**

**I.     Progressive's Motion for Protective Order (Dkt. #79)**

Progressive's initial motion for a protective order addressed a Rule 30(b)(6) notice which contained twelve topics on which the FDIC-R was seeking testimony from representatives of Progressive.  Progressive maintained that the notice seeking testimony on these twelve topics was "immensely burdensome," not relevant to any claims or defenses involved in this case, and that the burden and expense of the proposed discovery outweighed any benefit the FDIC-R would potentially derive from the discovery.  Progressive therefore sought a protective order barring the FDIC-R from seeking testimony on six of the twelve topics.  However, Progressive did not object to providing testimony on the remaining topics that the parties had narrowed by agreement.

**II.    The FDIC-R's Motion to Compel (Dkt. #86).**

The FDIC-R's motion to compel accused Progressive of filing the motion for protective order to "beat it to the punch" after a recent meet and confer session regarding the noticed deposition topics.  The FDIC-R requested that the court deny Progressive's motion for protective order as premature until Progressive produced documents responsive to its requests for production.  The motion also indicated that Progressive's motion for protective order suggested that the court's intervention would be required to resolve discovery disputes about the FDIC-R's requests for production of documents in several subject matter areas.  Additionally, Progressive had informed the FDIC-R that it would not run search terms for ESI directed at the disputed categories of information the FDIC-R requested.  The FDIC-R's motion to compel requested that the court compel Progressive to conduct ESI searches and hard copy searches for broad categories of information Progressive's counsel indicated it would not produce.

**III.   The September 24, 2013 Hearing.**

At the September 24, 2013, status and dispute resolution conference, the parties represented that they had resolved all of the disputes in their respective motions with the exception of a dispute regarding whether reinsurance information was discoverable in this action.  As indicated, the court directed the parties to reduce their understandings to a written stipulation and proposed order and to submit supplemental briefs regarding their remaining dispute.  No proposed stipulation and order resolving disputes was submitted and the parties' Supplemental Briefs (Dkt. ##107, 108) indicate that

in the process of reducing their agreements to writing, it became apparent that their disputes were not resolved.

**IV.     The Parties' Remaining Discovery Disputes.**

The FDIC-R has withdrawn it's Rule 30(b)(6) notice that prompted Progressive to file the motion for protective order.  Nevertheless, Progressive seeks a protective order precluding the FDIC-R from making a future request for testimony concerning reserve and reinsurance information.  The court will address the reinsurance discovery dispute in the context of the FDIC-R's motion to compel, and deny Progressive's motion for a protective order as moot.

The court will address the parties' discovery disputes in the motion to compel by subject matter instead of individual discovery request numbers as the parties have done in their written exchanges attempting to resolve these disputes, and in their supplemental briefs.  The FDIC-R's motion to compel sought an order compelling Progressive to produce eight categories of documents and ESI: (1) other claims; (2) other lawsuits; (3) claims manuals, and policies and procedures regarding the investigation, defense, resolution, and settlement of insurance claims; (4) Progressive's document retention policy; (5) Progressive's reserves; (6) Progressive's reinsurance information and communications; (7) communications regarding Progressive's "other insureds"; and (8) regulatory filings.  During the meet and confer process, the FDIC-R withdrew its request for documents and ESI in categories 3, 4, 5, and 8 with respect to its request for regulatory filings in states other than Nevada.  This order will therefore not address these withdrawn requests.  The remaining disputes are addressed below.

**A.     Other Claims.**

The FDIC-R seeks discovery concerning claims opened since January 1, 2004, under any Progressive D&O policy issued to a financial institution in which Progressive made a payment for defense, indemnification, or settlement of the following claims issues:

1.     a tort claim involving loans involving Insured Persons Liability Coverage, Company Indemnification Coverage, or Broad Form Company Liability Coverage, but excluding truth-in-lending claims;

2.     a claim involving alleged damages relating to unpaid, unrecoverable, or outstanding loans, leases, or extensions of credit, or any forgiveness of debt;

3.     the person or entity asserting the claim was not an Insured, Insured Person, or Company as those terms are defined in the Progressive policy form, and the claim involved an assertion by Progressive that it was barred or could be barred by the insured versus insured exclusion;

4.     the claim was brought by a regulatory body, such as the FDIC, or a state regulatory agency, in its capacity as a regulator or its capacity as a conservator or receiver of a bank, or by a trustee.

Progressive objected to discovery of any claims made against Progressive by any other insureds on multiple grounds. First, Progressive maintained that the burden of producing the discovery outweighed any likely benefit. The FDIC-R clarified that it was seeking discovery of payments made by Progressive that involved claims related to loans from January 1, 2004, and D&O policies issued to financial institutions. In its initial papers, Progressive claimed, through the declaration of M. Terrence Cawley, Liability Claims Manager for ABA Insurance Services, Inc., Progressive's managing general agent, that there were a total of 3,508 claim files opened under a D&O liability insurance policy in the past ten years. 3, 217 of those claims were opened on or after January 1, 2004. Mr. Cawley's declaration averred that there was no simple or straightforward way for Progressive to identify the nature of the claims, whether a lawsuit was filed, and if a denial of coverage was based on the definition of loss contained in the policy or under the insured versus insured exclusion. Progressive claimed that it would have to undertake a multi-step process to manually review all of the claim files opened in ten years to identify the claims and lawsuits based on these policy provisions. Cawley's declaration estimated it would take a team of individuals many weeks to several months to complete the initial review manually because Progressive had no automated way to identify which of the 3,217 claims opened since January 1, 2004, involved claims related to loans, or to search electronically for such claims. Additionally, the large majority of the files are stored off site, and Progressive employees would be required to review the files in addition to their regular duties.

The FDIC-R located and reviewed the transcript of a deposition Mr. Cawley provided in an unrelated case. Based on information Mr. Cawley provided in his deposition testimony, the FDIC-R learned that, contrary to Progressive's earlier claims, there are numerous ways for Progressive to

7

1    identify responsive claims.  At his deposition, Mr. Cawley testified about Progressive's standard

2    operating procedures when a new claim is filed, and identified standard documents generated in the

3    claims handling process which Progressive calls its "Progress Documents."[2]

4         After the FDIC-R obtained this deposition testimony, the parties engaged in further discussions

5    and counsel for Progressive now admits that there are 526 claim files involving D&O policies opened

6    since January 1, 2004, that resulted in payment by Progressive, rather than the 3,217 which Progressive

7    claimed could not be electronically searched and must be manually retrieved and reviewed.  During oral

8    argument at the October 29, 2013, hearing, counsel for Progressive indicated that he received incorrect

9    information initially and was apologetic for the error.  It is difficult for the court to understand how this

10   error was made.  Mr. Cawley provided the declaration used to support Progressive's arguments that this

11   discovery was unreasonably burdensome.  Mr. Cawley attested that Progressive could not electronically

12   search for the information requested and would have to manually locate, retrieve and review the files to

13   obtain the information the FDIC-R was seeking.  However, the FDIC-R's discovery of Mr. Cawley's

14   deposition testimony in an unrelated case led to Progressive to now claim that there are only 526 claim

15   files which need to be reviewed for responsive documents.  Either inadequate effort was made to obtain

16   accurate information at the time the motion for protective order and opposition to the motion to compel

17   was filed, or Progressive has not been candid with opposing counsel and the court.

18        The FDIC-R attached samples of the Progress Documents to its supplemental brief.  During the

19   meet and confer process Progressive offered to review the Progress Documents and provide the FDIC-R

20   with a list of all Progress Documents it reviewed.  Progressive outlined a detailed multi-step process to

21   review, cull and determine whether any of these 526 claim files involve the claim or litigation issues

22   involved in this dispute.  If so, Progressive agreed to produce non-privileged portions of the claim files

23

24        [2]The FDIC-R's supplemental brief was filed under seal because Progressive has designated these
25   documents and information about them confidential and proprietary.  Pursuant to LR 10-5(b) the FDIC-
     R's supplemental brief remains sealed until further order of the court.  The court gave Progressive, as the
26   party claiming that the documents are confidential and protected from public disclosure, until November
     1, 2013, in which to file a memorandum complying with the requirements of *Kamakana v. City and*
27   *County of Honolulu*, 447 F.3d 1172 (9th Cir. 2006), and to show good cause why the document should
28   remain under seal.

1   with a privileged document log identifying any documents withheld or redacted from the files on the

2   basis of privilege.  During oral argument, the court inquired of counsel for Progressive how long he

3   believed the first stage of the process Progressive proposed would take.  Counsel did not know, but

4   estimated it would take at least a couple of weeks for individuals to print out and review the Progress

5   Documents to initiate the first stage of the process.  If the first stage review indicated potential

6   responsive documents, counsel could not tell how long it would take to retrieve and review the files to

7   determine whether the claims involved litigation issues involved in this case.

8        The court appreciates the willingness of counsel for Progressive to compromise on this issue

9   and efforts to suggest an approach to review, retrieve and produce responsive documents..  However,

10  the court finds the complicated proposal offered by Progressive cumbersome, and likely to create future

11  discovery disputes.  The court has reviewed samples of the Progress Documents.  One such document,

12  attached as Exhibit 3 to the FDIC-R's supplemental brief, contains detailed information about a

13  potential claim made under a D&O policy.  The form contains a description of the individual riders

14  involved in the policy, the type of claim, when the claim was discovered or reported, and a description

15  of the claim.  The description of the claim on the form was quite detailed.  The first line of the

16  description indicates that the insured bank had been named as a defendant in a state court action and

17  identifies the state and county where the action was filed.  A summary of the complaint allegations is

18  provided.  The form also contains a section entitled "Coverage Analysis".

19       The court's review of these Progress Documents suggests that complying with these discovery

20  requests, as narrowed, is not overly burdensome or oppressive.  The court will therefore require

21  Progressive to review each of the six categories of Progress Documents identified in the parties'

22  supplemental briefs and attachments to identify which of the 526 claim files opened since January 1,

23  2004, are likely to involve claim and litigation issues involved in this case.  The court will also require

24  Progressive to provide a hard copy of each of the six categories of Progress Documents which

25  Progressive's preliminary review indicates **may** contain potentially responsive documents to counsel for

26  the FDIC-R.   The court recognizes that this may give the FDIC-R access to information that may not

27  be relevant to claim and litigation issues involved in this case.  However, given the inaccuracy of

28  ///

9

information initially provided, the court finds that this is an appropriate measure to allow the FDIC-R to evaluate Progressive's compliance with its discovery obligations and this order.

Counsel for Progressive claims that at least one category of the Progress Documents may contain privileged communications.  The court will therefore permit counsel for Progressive to redact portions of the Progress Documents for each of the claim files counsel reasonably believes are privileged.  Progressive shall provide a privilege log which fully complies with the requirements of Rule 26(b)(5) with respect to any information withheld on the basis of privilege.  Progressive shall have until **November 14, 2013,** to review the Progress Documents in each of these 526 files and until **November 21, 2013** to produce the Progress Documents for potentially responsive documents to counsel for the FDIC-R.

Progressive shall have until **December 12, 2013**, in which to review the claim files which contain potentially responsive documents and to produce the non-privileged portions of the claim files responsive to these discovery requests to the FDIC-R with a privileged document log identifying any documents withheld or redacted from the file(s) on the basis of privilege.

**B.    Other Lawsuits**.

The FDIC-R seeks discovery concerning claims in which lawsuits were filed by or against Progressive since January 1, 2004, concerning a Progressive D&O policy issued to a financial institution that involved one or more of the following "litigation issues":

1.    the claim involved alleged damages relating to unpaid, unrecoverable, or outstanding loans, leases, or extensions of credit or any forgiveness of debt, and Progressive denied coverage or issued a reservation of rights;

2.    the person or entity asserting the claim was not an Insured, Insured Person or Company as those terms are defined in a Progressive policy and Progressive denied coverage or issued a reservation of rights based on the insured versus the insured exclusion;

3.    the claim was brought by a regulatory body, such as the FDIC or a state regulatory agency, in its capacity as a regulator, or in its capacity as a conservator or a receiver of a bank, or by a trustee and Progressive denied coverage or issued a reservation of rights.

/ / /

The parties make substantially similar arguments about whether this discovery should be compelled or protected as they made for the "Other Claims" discovery.  The court will require Progressive to follow the same procedure outlined in the preceding section to identify prior lawsuits involving similar claims.  As indicated, the sample Progress Documents attached to the FDIC-R's supplemental brief establishes that the form attached as Exhibit 3 identifies a claim made when a lawsuit has been filed.  The description of the claim contains a description of the claim itself, and the complaint allegations.  Thus, the court finds that it is not unduly burdensome or oppressive to require Progressive to review the Progress Documents in each of these 526 claim files to identify claims involving lawsuits which are potentially responsive to the FDIC-R's discovery requests.  The court recognizes that giving the FDIC-R the Progress Documents for all claims involving potentially similar litigation and claim issues may provide some discovery that may not be relevant to the issues involved in this case.  The court also recognizes that these 526 claim files may not produce a complete list of all cases filed involving payments of claims and litigation issues similar to this case.  However, given the representations that there is no straightforward way to electronically search for and retrieve a list of all lawsuits involving similar claims or litigation issues this approach balances the parties' competing concerns.

### C.    Reinsurance Information Communications.

The FDIC-R seeks discovery of communications with any reinsurer about claims under the policies in dispute in this case, all documents relating to the purchase, placement or ceding of any reinsurance by Progressive that relate to the policies, including all status reports provided by Progressive to reinsurance companies, and memoranda relating to meetings with reinsurers.  The FDIC-R also seeks documents relating to any communications with any reinsurer about the claims involved in this case.

Progressive has always maintained that reinsurance information is irrelevant to resolution of the sole issue involved in this case, *i.e.*, whether the Progressive policy at issue provides coverage for the FDIC-R's claim against the directors, officers, and employees of Silver State.  However, Progressive has produced, and will continue to produce, what it regards as non-privileged communications with reinsurers concerning the Progressive D&O policy, the drafting history of the policy form and pertinent

provisions, including a 2004-2005 revision to the policy, and the meaning, interpretation, application, and use of the policy provisions at issue in this matter.  Progressive will not, however, agree to produce documents and ESI of the claim-specific reinsurance materials the FDIC-R seeks.  Progressive opened six claim files with respect to the policy involved in this coverage dispute.  Progressive argues these six claim files involve separate claims that have nothing to do with the FDIC-R's claim.

In this case, Progressive asserts that two of the four individual Defendants in the FDIC-R's underlying lawsuit are not entitled to coverage under the Progressive policy because no claim was first made against them during the policy period or discovery period.  This is a legal issue, not a factual dispute about what information was provided to Progressive.  Additionally, requiring Progressive to provide reinsurance materials the FDIC-R seeks would invade the attorney-client privilege and work-product doctrine.  Progressive acknowledges that there may be circumstances in which communications between an insurer and reinsurer regarding a claim would not be privileged.  However, in this case, Progressive retained counsel to assist it in matters concerning Silver State in June 2008, prior to the bank's failure in September 2008.  As such, Progressive argues that Progressive's counsel have been providing legal advice and analysis concerning the FDIC-R's potential claim, as well as the claims the FDIC-R eventually brought with its reinsurers.  To the extent that Progressive shared analysis of the D&O's potential liability to the FDIC-R and/or the coverage issues addressed in this action with its reinsurers, this analysis would reflect the legal advice and analysis provided to Progressive by its counsel and is covered by the attorney-client or work-product privilege.

The FDIC-R argues that the two primary insurance policy provisions at issue in this case have already been found to be ambiguous by the district judge in this case, and district courts in two other cases.  The district judge's order denying Progressive's motion for summary judgment has already determined that discovery is needed to decide the parties' insurance coverage disputes.  The FDIC-R seeks reinsurance discovery to establish Progressive's own interpretation of its policy and coverage analysis, which Progressive admits have been communicated to its reinsurer(s).  Progressive's communications with its reinsurer(s) may provide information relevant to a number of issues involved in this case including: (1) how the policy should be interpreted; (2) Progressive's practical construction of the policy provisions at issue; (3) whether the insureds' expectations of coverage were reasonable;

and (4) the FDIC-R's affirmative defenses of waiver, estoppel, bad faith and unclean hands.  Other courts have recognized that insurers communicate information about strengths and weaknesses of the policy holders' claims to reinsurers as a matter of routine business practice and have allowed discovery of these communications.

The FDIC-R also points out that an insurer may take inconsistent positions regarding coverage in communications with its policy holders versus communications with its reinsurers.  In this case, discovery has indicated that Progressive's reinsurers played an active role in marketing and underwriting the D&O liability policies involved in this case.  Progressive sent its reinsurer a detailed memoranda regarding the underwriting of its D&O policies and requested approval to make changes to these policies.  The FDIC-R is aware of one memorandum sent to the reinsurer's board of directors that takes a coverage position contrary to the position Progressive has taken in this case.  In that memorandum Progressive reportedly admitted that the carveout from the definition of "loss" for "any unpaid, unrecoverable, or outstanding loan . . . to any customer" was "only for the purpose of providing entity coverage" and that the intent of the loss definition in the policy had not changed.

The FDIC-R argues that Progressive's objections to producing claim-specific reinsurance information on attorney-client privilege or work-product doctrine grounds are misplaced because numerous courts have held that reinsurance documents are not privileged.  This is because courts have recognized that reinsurance-related information may be generated in the ordinary course of business, and not for the purpose of seeking legal advice or solely because litigation is anticipated.  Although Progressive may be able to establish that certain reinsurance communications are privileged, it is not entitled to assert a blanket privilege with respect to all such communications.  The court should order Progressive to produce these reinsurance communications, permitting Progressive to serve a privileged document log for any documents withheld as privileged.

The court agrees that in the run of the mill insurance coverage dispute, discovery of reinsurance information is generally not relevant.  The court also agrees that even if reinsurance discovery is relevant within the meaning of Rule 26(b)(1), the burden or expense of the proposed discovery most often outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the

13

1  discovery in resolving the issues.  *See* Fed. R. Civ. P. 26(b)(2)(C)(iii).  Among other reasons, this is
2  because in the vast majority of insurance coverage litigation, there is a well-developed body of law
3  interpreting standard policy language.  However, this case involves an unsettled area of the law
4  involving interpretation of D&O policy provisions issued to financial institutions.

5     The district judge in this case has found that the policy provisions in dispute are ambiguous, and
6  require discovery to resolve the parties' competing positions.  The district judge has already determined
7  that he needs discovery to give factual context to the parties' legal disputes.  He has not, however,
8  provided any guidance about what discovery is needed other than to note the FDIC-R's arguments are
9  based on the reasonable expectation of the insureds regarding the scope of coverage for management
10  activities because Progressive advertised and represented that the policy would cover actions brought by
11  the FDIC, and that Progressive intended to provide this coverage.  *See* Order (Dkt. #73).  Under these
12  circumstances, the court finds that the FDIC-R is entitled to discovery of communications between
13  Progressive and its reinsurer(s) on the six specific claims involved in the underlying action, in addition
14  to the "general" reinsurance communication information Progressive has agreed to provide.

15     The court finds that communications with the reinsurer(s) are relevant and discoverable within
16  the meaning of Rule 26(b)(1) for various reasons: (1) to determine how Progressive has interpreted the
17  policy provisions in dispute in this lawsuit in communications with its reinsurer(s); (2) whether
18  Progressive's interpretations of the policy provisions in dispute in this action have been consistent or
19  inconsistent with positions taken vis-a-vis its policy holders; (3) whether Progressive and its
20  reinsurer(s) have discussed or reached understandings with respect to whether management activity
21  claims under the D&O policies would be covered; (4) whether Progressive and its reinsurer(s) discussed
22  the insureds' expectations on the scope of coverage; (5) when Progressive received notice of certain of
23  the officers, directors, and employees' claims which Progressive maintains were not timely provided;
24  (6) if the policy holders' claims were untimely, whether Progressive claimed it was prejudiced by the
25  failure to provide timely notice of the potential claim; (7) whether, and to what extent, the reinsurer(s)
26  were involved in sales and marketing of the D&O policies in dispute in this case, and if so, what the
27  sales and marketing efforts reflect in terms of the reasonable expectations of the insureds concerning
28  the scope of coverage.

The court appreciates that certain communications between Progressive and its reinsurer(s) may be privileged as litigation was clearly foreseeable before the bank failed in September 2008. However, Progressive is not entitled to assert blanket privilege protection against all disclosures. Blanket assertions of privilege are highly disfavored in the Ninth Circuit. Progressive and its reinsurers are in the business of insurance and must continue to make business judgments and decisions when litigation is foreseeable, threatened or pending. An insurance company, like any other corporation, can only act through its officers, directors, and authorized employees. These individuals must often make business decisions which have legal implications. Their confidential communications with their lawyers for the purpose of receiving legal advice are generally privileged. Their business decisions are not. The confidential advice they receive from their lawyers is generally privileged. The decisions and actions taken as a result of that advice are generally not.

Additionally, ordinarily the voluntary disclosure of privileged information waives privilege. If Progressive shared confidential attorney client advice or work product with its reinsurers the shared information may or may not be privileged. The common interest doctrine allows parties with common legal interests to share legal advice and analysis without waiving the privilege. However, for the common interest doctrine to apply, the parties must share a common legal interest rather than a common commercial or financial interest. As the FDIC-R points out, Progressive may or may not have the same legal interests concerning whether the D&O policy in dispute in this case covers the FDIC-R's claims against the insureds in the underlying action. In short, the fact that some of the reinsurance information the FDIC-R seeks may be privileged is not a basis for denying any reinsurance discovery.

**D.**   **Other Insureds**.

The FDIC-R seeks discovery of information about Progressive's communications with the insurance broker involved in the D&O policy in dispute in this case, the insurance broker that provided Silver State with the Progressive D&O policy, and Progressive's communications with other insureds involving the same policy provisions involved in the parties' disputes. The parties have agreed that "other insureds" refers to entities and persons insured by Progressive other than Silver State Bank and entities and persons insured under policies issued by Progressive to Silver State Bank.

/ / /

Progressive objects to these requests only to the extent they seek discovery of communications concerning D&O liability insurance policy Progressive issued to insureds other than Silver State. Progressive agreed to produce documents regarding communications concerning Progressive's D&O insurance products generally, or communications that concern the policies Progressive issued to Silver State. However, for the same reasons Progressive opposes discovery of other claims and lawsuits, Progressive argues the FDIC-R is not entitled to discovery regarding Progressive's other insureds. The FDIC-R argues it needs this discovery for the same reasons it needs discovery of other claims and other lawsuits filed involving these policies.

The court will deny the FDIC-R's request for discovery of communications with other insureds, finding that this discovery is duplicative and cumulative of discovery the court has compelled with respect to other claims and other lawsuits. There may be additional communications with other insureds not contained in the 526 D&O claim files described in this order who have made similar claims to those involved in this case. However, given the amount of discovery the FDIC-R should be receiving from the Progress Documents and the claim files, the court will apply Rule 26(b)(2)(C)(iii) to limit the FDIC-R's request for discovery of communications from other insureds not contained in these files.

For the reasons stated,

**IT IS ORDERED** that:

1. Plaintiff Progressive Casualty Insurance Company's Motion for Protective Order (Dkt. #79) is **DENIED** as moot, the FDIC-R having withdrawn its request for a Rule 30(b)(6) deposition on the topics in dispute.

2. The FDIC-R's Motion to Compel (Dkt. #86) is **GRANTED in part** and **DENIED in part** consistent with the body of this order.

3. Progressive shall have until **November 14, 2013**, to review the Progress Documents for each of the 526 claim files involving payments under D&O policies from January 1, 2004, to the present. Progressive shall produce a hard copy of the Progress Documents which preliminary review indicates may contain potentially responsive claims and lawsuit information to counsel for the FDIC-R by **November 21, 2013.** Progressive

16

shall also serve a privileged document log for any documents withheld or redacted as privileged.  Progressive may redact the name of the insured from the Progress Documents, but shall produce the Progress Documents in a manner that allows the FDIC-R to determine which Progress Documents pertain to which claim.

4.     Progressive shall have until **December 12, 2013**,  to produce the non-privileged portion of the claim files responsive to the FDIC-R's discovery requests as described in this order.

Dated this 1st day of November, 2013.

Peggy A. Leen
United States Magistrate Judge

17