**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| PROGRESSIVE CASUALTY INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) |  Case No. 2:12-cv-00665-KJD-PAL |
| vs. | ) ) |  **ORDER** |
| FEDERAL DEPOSIT INSURANCE CORPORATION, et al., | ) ) ) |  (Mot. Compel - Dkt. ##130, 132) (Mot Enforce - Dkt. #134) |
| Defendants. | ) ) ) |

Before the court is the Federal Deposit Insurance Corporation as Receiver for Silver State Bank's Motion to Enforce this Court's Discovery Order, Agreed ESI Protocol, and Motion to Compel the Production of Documents (Dkt. ##130, 132, 134). The court has considered the moving and responsive papers (Dkt. ##138, 134) and the arguments of counsel. At the hearing conducted February 25, 2014, the court directed counsel for the parties to submit proposed orders articulating their respective views on how the court should dispose of these motions. Counsel complied and the court has reviewed and considered the parties' competing Proposed Orders (Dkt. #143, 144).

**BACKGROUND**

The nature of this action and procedural history are described in detail in the court's November 1, 2013 Order (Dkt. #112) deciding the parties' multiple discovery disputes, and will not be repeated here. Briefly, this is declaratory judgment action in which Progressive Insurance Company ("Progressive") seeks a judicial declaration that a Directors & Officers Company Liability Insurance Policy for Financial Institutions ("D&O Policy") issued to Silver State Bank ("Silver State"), and other named insureds does not provide coverage for a lawsuit brought by the Federal Deposit Insurance Corporation as Receiver ("FDIC-R") against four former directors, officers and/or employees of Silver

State.  Progressive's complaint asserts, *inter alia*, that the Insured versus Insured ("IvI") exclusion bars coverage for the FDIC-R action, and that a carve-out from the definition of Loss (the "loan loss carve-out") also bars coverage for damages the FDIC-R seeks to recover from the directors and officers.  The district judge denied a motion for summary judgment filed by Progressive in an Order (Dkt. #73) entered November 2, 2012, finding that the issues raised by Progressive could not be fairly determined without discovery.  The motion was denied as premature "so that the parties can proceed with discovery in this case."  *Id*.

In a series of hearings, this court heard argument and reviewed briefing on a motion for protective order filed by Progressive and a motion to compel filed by the FDIC-R.  (Dkt. ##79, 86, 91, 94, 107, 108).  An order resolving those motions was entered November 1, 2013 (Dkt. #112) which denied Progressive's motion for protective order as moot.  The order also granted in part and denied in part the FDIC-R's motion to compel.  Neither party requested clarification or reconsideration of the court's order.  However, the parties' current disputes involve their competing understandings of the court's order and/or Progressive's compliance with that order.

## DISCUSSION

### I.    The Parties' Disputes.

The current motions address seven issues: (1) Progressive's compliance with the court's November 1, 2013 discovery order requiring Progressive to produce claim files and reinsurance documents; (2) Progressive's review and production of electronically stored information ("ESI") and compliance with the stipulation and order governing ESI protocol; (3) Progressive's search for and production of documents responsive to the FDIC-R's discovery requests beyond the searches of documents in ABAIS' possession; (4) the FDIC-R's concerns that Progressive has withheld or redacted documents responsive to its discovery requests based on Progressive's own relevance analysis; (5) the adequacy of Progressive's privilege logs; (6) whether Progressive should be required to produce non-privileged portions of its Silver State claims file regarding the FDIC-R action; and (7) whether Progressive should be required to certify that it has produced all non-privileged documents responsive to the FDIC-R's discovery requests, notwithstanding its multiple objections, and that it has identified all privileged documents withheld notwithstanding its objections, on a privileged document log.

1   At the February 25, 2014 hearing, the FDIC withdrew its motion to compel regarding

2   Progressive's production of ESI and compliance with the ESI protocol.  The FDIC withdrew its motion

3   because the court entered an order in the related matter of *Progressive Casualty Insurance Co. v.*

4   *Delaney*, et al., Case No. 2:11-cv-0678-LRH-PAL, that Progressive and the FDIC as Receiver for Sun

5   West Bank confer regarding ESI production and protocol.  Counsel for both sides are engaged in ESI

6   discussions, and the court has ordered that the parties submit a modification to the agreed upon  ESI

7   proposals or their competing ESI proposals for the court's consideration.  A hearing is scheduled for

8   March 25, 2014, in the event the parties are unable to agree on a common resolution of their ESI

9   disputes and competing proposals for resolving those disputes.  A resolution of the parties' ESI disputes

10   in the related case would also resolve the parties' ESI disputes in this case.

11   Additionally, the FDIC withdrew that portion of its motion requesting an order compelling

12   additional reinsurance documents because Progressive produced documents after the FDIC filed its

13   motion.

14   **A.     The Court's November 1, 2013 Order Regarding Other Claims Discovery.**

15   The order required Progressive to review each of the six categories of Progress Documents

16   identified in the parties' supplemental briefs and attachments to identify which of 526 claims files

17   opened since January 1, 2004, were likely to involve claim and litigation issues involved in this case.  It

18   gave Progressive until November 14, 2013, to review the Progress Documents in each of the 526 files

19   and until November 21, 2013, to produce the Progress Documents for potentially responsive claims

20   files to counsel for the FDIC-R.

21   Counsel for Progressive represented to the court that the Progress Documents had been

22   reviewed for each of the 526 claims by November 14, 2013, as ordered.  Counsel also represented that

23   its review identified: (1) 20 failed bank matters arising from the recent global financial crises in which

24   Progressive and the FDIC are involved; and (2) 89 non-failed bank matters.  Progressive produced the

25   Progress Documents for these 109 claims files to the FDIC along with a privileged document log for

26   any documents withheld or redacted on November 21, 2013, as ordered.  Progressive produced the

27   claims files for 11 of the 109 claims.

28   / / /

Progressive did not believe that the FDIC-R was seeking the claims files in the 20 failed bank matters because it was involved in those matters and had access to this information.  The FDIC-R's motion to compel asks the court to order Progressive to review and produce the claims files in the 20 failed bank matters, and the 78 additional claims files involving loans in non-failed bank claims.

The court's Order (Dkt. #112) identified the discovery the FDIC-R was seeking concerning claims opened since January 1, 2004, and described the claims issues for which discovery was sought.  The order did not, however, order Progressive to produce claims files in the four broad categories of claims issues the FDIC's Motion to Compel (Dkt. #86) sought.  The court's order was more limited.  It required Progressive to review each of the six categories of Progress Documents identified in the parties' supplemental briefs and attachments to identify which of the 526 claims files opened since January 1, 2004, were likely to involve claim and litigation issues involved in this case.  Neither side requested clarification of the court's order.  The court required Progressive to serve the FDIC-R with a copy of the Progress Documents for all of the files which Progressive's preliminary review indicated **may** contain potentially responsive documents to allow the FDIC-R to assess Progressive's compliance with the court's order.  The FDIC-R received the Progress Documents for each of the 109 files Progressive's counsel identified may contain potentially relevant documents.  Counsel for Progressive conducted a preliminary review of 89 files in non-failed bank matters, and determined that 11 of those files contained claim and litigation issues involved in this case.  Specifically, these 11 files may contain information about the IvI exclusion, and the loan loss carve-out definition of loss.  Although the FDIC-R has had the Progress Documents for all 89 files which provide detailed information about the nature of the claims, it does not assert that any of the 78 additional files are likely to contain information about the IvI exclusion or the loan loss carve-out definition of loss involved in this case.

The FDIC-R seeks discovery of other claims files to determine whether Progressive has taken a coverage position that is inconsistent with the position Progressive has taken in this case.  As the FDIC-R was a party to all 20 of the failed bank claims, the FDIC-R has access to this information, and the court will not compel Progressive to produce the files in the 20 failed bank matters.  The court will also deny the FDIC-R's request to compel Progressive to produce the 78 claims files which preliminary review indicates did not involve the IvI exclusion or loan loss carve-out from the definition of loss

4

1   issues involved in this lawsuit.  With respect to the 20 failed bank claim files, this information can be

2   obtained from the FDIC's own internal sources in a manner that is more convenient, less burdensome,

3   or less expensive.  The FDIC-R may not have all of the information in Progressive's claims files in

4   these 20 failed bank matters, but certainly has the information it needs about Progressive's coverage

5   positions.  With respect to the 78 claim files in non-failed bank matters, the court concludes that the

6   burden or expense of the proposed discovery outweighs its likely benefit.  The FDIC-R has the Progress

7   Documents for each of the 78 claims files and has not made any showing that any of these claims files

8   are likely to involve claim and litigation issues involved in this case, that is, the IvI exclusion or loan

9   loss carve-out.

10                      **B.       Progressive's Review and Production of Documents.**

11          The FDIC-R seeks an order compelling Progressive to produce documents and ESI in

12   Progressive's possession as opposed to documents in the possession of its managing general agent,

13   ABA Insurance Services, Inc. ("ABAIS").  The FDIC-R argues that deposition testimony has

14   established that Progressive has not performed independent searches for its own responsive documents.

15   Progressive represents that there are materials pertaining to the ABA Insurance program at Progressive,

16   but that relevant, responsive, non-privileged documents Progressive may have are "likely largely

17   duplicative" of documents maintained by ABAIS that Progressive is producing from ABAIS files.

18   Progressive has explained the relationship between it and ABAIS as follows:

19          Prior to 2010, Progressive had a business unit called Professional Liability Group ("PLG").
            The PLG was the business unit within Progressive that was responsible for marketing the
20          ABA insurance program with respect to which Progressive acted as the primary insurance
            carrier until 2010.  It was the PLG that was responsible for underwriting the Progressive
21          policies issued to community banks pursuant to that program, including all of the policies
            at issue in the pending DJ actions, and it was the PLG that was responsible, prior to 2010,
22          for adjusting claims made under such policies.  It also was the PLG that was responsible for
            maintaining all business records related to the ABA insurance program, both paper and
23          electronic, pursuant to Progressive's document retention policy.

24          Prior to 2010, American Bankers Professional and Fidelity Insurance Corporation
            ("ABPFIC"), which participated in the program as a reinsurer, purchased Progressive's
25          interest in the program and created a new subsidiary, ABAIS, to manage it. [ABPFIC also
            changed its name at that time to American Bankers Mutual Insurance, Ltd.  ("ABMI").]
26          ABAIS serves two roles with respect to the program. First, ABAIS continues to market the
            ABA insurance program, underwrite policies issued to community banks by the new
27          primary insurer on that program, and manage claims made under those policies.  Second,
            and significant to this matter, in its capacity as managing general agent for Progressive,
28          ABAIS also continues to administer policies issued by Progressive and to adjust and

                                                      5

manage claims made under those policies. This includes all of the claims made by the FDIC against former directors and officers of failed banks that underlie the pending DJ actions.

At the time ABAIS assumed responsibility for the administration of the ABA insurance program from Progressive's PLG in April 2010, ABAIS was composed virtually entirely of persons who, until that time, had been employees of the PLG . . . . Moreover, those individuals did not relocate; ABAIS was and is located in the same physical office space that the PLG occupied prior to April 2010. Therefore, all of the physical files the PLG maintained for Progressive prior to the transition remained in the same physical locations following the transition as they had occupied prior to the transition, to be maintained for Progressive by ABAIS. The FDIC does not dispute this. Likewise, all electronic records maintained by the PLG, with the exception of email, were transferred in their entirety to ABAIS in conjunction with the transition. This includes both the proprietary Progress computer system the PLG used, and ABAIS continues to use, to administer the ABA insurance program, as well as all electronic documents that were stored on the portion of Progressive's servers assigned to the PLG. The FDIC does not dispute this either.

(Dkt # 129 at 4-6).

Progressive argues that based on its relationship with ABAIS and the information it has provided above, that it has properly relied on its counsel and ABAIS to insure that Progressive is producing all relevant, non-privileged documents maintained by ABAIS responsive to the FDIC's discovery requests. Progressive contends that the burden associated with identifying and possibly retrieving and reviewing documents in its own possession, separate from ABAIS, outweighs any potential benefit the FDIC-R may derive from a separate search of Progressive's own files.

The FDIC-R responds with several examples of types of documents or ESI that may be in Progressive's possession that are not in ABAIS's possession, such as files of individuals who were not located at the offices taken over by ABAIS, communications with reinsurers by Progressive employees, and files maintained by Progressive employees with continuing duties regarding claims under Progressive's D&O Policies after ABAIS took over the PLG group.

Progressive acknowledges that it has email files for certain former PLG employees that continue to be stored by Progressive on backup tapes. The motion to compel and to enforce does not address whether, and to what extent, Progressive should be required to restore these email files from backup tapes, other than those files Progressive has already restored. The draft proposed order prepared by the FDIC accepted Progressive's representations, that with the exception of email located on backup tapes, Progressive does not have any documents or ESI in its possession that is also not in ABAIS's possession. Thus, the FDIC-R's draft proposed order indicated the court should not require Progressive

1   to perform a search for what has been represented would be entirely duplicative responsive documents

2   produced or to be produced by ABAIS.  However, the draft proposed order prepared by Progressive

3   acknowledges that Progressive has responsive, non-privileged documents in its possession pertaining to

4   the ABA insurance program.  Progressive's draft proposed order does not request a finding that it has

5   **no** documents or ESI in its possession which are not also in ABAIS's possession.  Rather, Progressive

6   requests a finding that documents and ESI in its possession pertaining to the ABA insurance program

7   "likely are largely duplicative" of documents maintained by ABAIS that are being produced from its

8   files by Progressive.  (Dkt. #143:6, 18-22).

9   The court accepts the representations of counsel for Progressive concerning the relationship

10   between it and ABAIS.  The FDIC-R has had, and will continue to have, the ability to test the accuracy

11   of these representations in deposition discovery.  The court also accepts the representation made by

12   counsel for Progressive that any relevant, responsive, non-privileged documents Progressive may have

13   pertaining to the ABA insurance program are "likely largely duplicative" of documents maintained by

14   ABAIS that Progressive has produced and is producing in this case.  The court will therefore not

15   compel Progressive to conduct a separate search of its own files and ESI, independent of Progressive's

16   review and production of documents and ESI from ABAIS's files.  However, the court cautions

17   Progressive that should his representations prove inaccurate, or should the FDIC-R identify categories

18   of responsive, non-privileged documents Progressive may have in its own possession, not duplicated in

19   ABAIS's production, or other discovery the FDIC-R obtains, the court may order an additional review

20   and production.  Additionally, this order does not address whether, and to what extent, Progressive

21   should be required to restore email files from backup tapes for former PLG employees as that issue is

22   not before the court in the current motion to compel and enforce.

23   ### C.     The Parties' Responsiveness versus Relevance Disputes.

24   The FDIC-R argues in its motion to compel that it is concerned Progressive has improperly

25   withheld documents responsive to its discovery requests on relevance grounds.  The FDIC believes that

26   Progressive has withheld or redacted documents responsive to its discovery requests based on

27   Progressive's own determination that responsive documents are not relevant.  At the February 25th

28   hearing counsel for Progressive agreed with the general proposition that a party responding to discovery

1   requests must review and either object or produce responsive documents.  Progressive has made a

2   number of objections to the FDIC-R's broad discovery requests.  Counsel represented that he believed it

3   was clear from Progressive's objections and responses that with respect to most of the responses

4   Progressive was producing responsive documents notwithstanding its multiple objections.  Counsel for

5   Progressive also believed its objections and responses clearly identified those categories of responses

6   for which objections were interposed and no responsive documents were being produced.

7        During oral argument on the motion, the court concluded that counsel have not been sufficiently

8   precise in communicating their respective positions about this dispute.  The court fully appreciates the

9   FDIC-R's concerns that Progressive's objections and responses to the FDIC's requests for production of

10  documents suggest Progressive has withheld non-privileged documents based on a plethora of

11  objections interposed in the responses.

12       Progressive's responses to the requests for production of documents contain a "general

13  objection" section indicating that its responses are "subject to the objections set forth herein, without

14  waiving and expressly preserving: (a) any objections as to competency, relevancy, materiality, privilege,

15  and admissibility of any of the responses; and (b) the right to object to other discovery requests

16  involving or relating to the subject matter of the Document Requests responded to herein."  (Dkt. #132-

17  1, p. 340 of 369).  Twelve additional general objections follow.  Progressive objects to all of the

18  document requests "to the extent they seek documents" : protected from discovery by the attorney-client

19  privilege, the work-product doctrine, or any other applicable privileges or protections; or disclosure of

20  confidential and/or proprietary commercial information.  It also objects "to the extent" that the requests

21  are vague, ambiguous, overbroad, unduly burdensome;  beyond the scope of discovery pursuant to Fed.

22  R. Civ. P. 26(b); or not relevant or reasonably calculated to lead to the discovery of admissible

23  evidence.  These objections are followed by objections and responses to each of the FDIC-R's 67

24  requests for production of documents.  *Id*. p. 342-369.  Each of the responses to the 67 requests for

25  production of documents "adopts and incorporates" all of the general objections, and are followed by

26  additional objections to each of the requests.

27       The responses attached to the FDIC-R's motion do not recite the text of the request for

28  production, only the objections and responses.  After adopting and incorporating the general objections

8

and repeating boilerplate additional objections, the vast majority of the objections and responses end with a sentence, "subject to and without waiver of the foregoing general and specific objections, Progressive will produce documents responsive to this requests, to the extent any such documents exist."  A large number of the responses contain only objections, and another category of responses indicate Progressive will produce responsive documents "to the extent any such documents exist, but solely as related to communications between Progressive and any brokers or agents acting on behalf of Silver State Bank relating to the coverage or marketing of the Policy or Prior Policy issued by Progressive to Silver State Bank."

The FDIC-R's motion to compel does not identify any responsive documents it believes Progressive has improperly withheld.  It does not complain about any specific responses to any specific requests.  Rather, the FDIC-R requests a broad order that Progressive "produce documents responsive to the FDIC-R's request within three weeks of this Order, except as limited by court order or agreement, regardless of its own beliefs as to relevance."

The court finds it impossible to determine what documents Progressive has produced that are responsive to the FDIC-R's discovery requests, and what, if any, responsive documents other than those listed on its privileged documents logs, have been withheld from production.  The responses do not identify what documents are being produced that are responsive to any of the requests.  Rather, for those responses in which Progressive agrees to produce documents, the statement is merely made that it "will produce them."  The court will not, however, issue a broad order that Progressive must produce all documents responsive to all of the FDIC-R's requests.  The FDIC's motion does not comply with the requirements of LR 26-7(a) that "[a]ll motions to compel discovery or for protective order shall set forth in full the text of the discovery originally sought and the responses thereto, if any."

The Ninth Circuit has held that boilerplate objections or blanket refusals inserted into a response to a Rule 34 request for production of documents are insufficient to assert a privilege. *Burlington Northern & Santa Fe Ry Co. v. U.S. District Court*, 408 F.3d 1142, 1149 (9th Cir. 2005). The court will, therefore, deny the FDIC-R's motion to compel because it does not comply with LR 26-7(a), and does not identify any specific discovery responses for which an order to compel is sought. However, Progressive's boilerplate objections are stricken and overruled.

**D.   Progressive's Privilege Logs**.

The FDIC contends that Progressive's privileged document logs do not comply with the Federal Rules of Civil Procedure in that the information provided is insufficient to analyze Progressive's claims of privilege.  The FDIC seeks an order that Progressive has either waived privilege, or compelling Progressive to provide revised privilege logs.  Progressive responds that the FDIC has not identified any specific entries in the logs the FDIC-R contends are deficient.

Progressive's privilege logs are attached as exhibits to the FDIC-R's motion.  The logs contain columns indicating whether the document has been withheld or redacted, the date of the document, a document description, the number of pages the document and the privilege asserted.  The logs do not, however, comply with the requirement of Rule 26(b)(5) which requires that any party withholding information otherwise discoverable on the basis of privilege must "describe the nature of the documents, communications, or tangible things not produced or disclosed–and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."  Rather, the document description provides general information such as letter from D. Bailey to G. Juhnke re: draft D&O Policy & endorsements enclosing copies of drafts with notations.  The document descriptions are insufficient to enable the FDIC-R or the court to assess the validity of the assertion of the privilege claimed.

In *Burlington*, the Ninth Circuit refused to adopt a per se rule that failure to serve a rule-compliant privilege log within Rule 34's 30-day time limit waived privilege.  408 F.3d 1149.  Instead, the court held that the district courts should make case-by-case determinations of waiver using Rule 34's 30-day period as a default guideline, considering the following factors: (a) the degree to which the objection or assertion of privilege enables the propounding party and the court to evaluate whether each withheld document is privileged; (b) the time limits of the objection and accompanying information about the withheld documents; (c) the magnitude of the document production; and (d) other particular circumstances that make responding to discovery unusually easy or hard.  Progressive's privileged document logs provide a significant amount of information, but not enough information to enable the court or the FDIC-R to assess the validity of the assertion of privilege.  However, the magnitude of the production and the time needed to prepare fully compliant privilege logs weigh in favor of a finding of

non waiver. The court will therefore grant the FDIC-R's motion to compel Progressive to serve

supplemental privilege logs that fully comply with the requirements of Rule 26(b)(5) no later than April

11, 2014.

      **E.      The Non-Privileged Portions of Progressive's Silver State Claims File.**

      The FDIC-R seeks an order compelling the production of Progressive's Silver State claim file.

Progressive agreed to produce the Sun West Bank claim file in a related case filed in this district,

*Progressive Casualty Insurance Co. v. Delaney, et al.*, 2:11-cv-0678-LRH-PAL.  Progressive argues

that it should not be compelled to produce the Silver State claim file because any potential benefit to the

FDIC-R is outweighed by the burden to Progressive of reviewing and producing the file.  Progressive

agreed to produce non-privileged documents in the Sun West failed bank case prior to Progressive's

coverage determination.  However, the Sun West claim file involved a two-month period of time while

approximately three years passed between the time Progressive opened its claim file and the time the

FDIC-R asserted a claim in the Silver State matter.

      The court finds that Progressive has not met its burden of establishing that review and

production of the Silver State claim file is unduly burdensome, or that the burden of reviewing and

producing the file is outweighed by its likely benefit.  The court will therefore order Progressive to

produce the non-privileged portions of the Silver State claim file and to serve a privilege log identifying

any documents redacted or withheld from production on privilege grounds no later than April 11, 2014.

However, the court will not require Silver State to produce documents from the claims file that were

provided to the FDIC-R pre-suit, or communications from the FDIC-R during settlement discussions

among the parties.

      Having reviewed and considered the moving and responsive papers, the arguments of counsel,

and the parties' draft proposed orders resolving these motions,

/ / /

/ / /

/ / /

/ / /

/ / /

11

**IT IS ORDERED** that the motions are granted in part and denied in part as set forth above. Progressive shall have until April 11, 2014, in which to serve supplemental privilege logs, and documents ordered produced pursuant to this order.

Dated this 11th day of March, 2014.

_____
Peggy A. Leen
United States Magistrate Judge